## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CHRIS TALLEY, MARIE FRANZEN, MARK
PREVITI, CORY SEALE, JESSICA and
ROBERT LOADHOLTES, DAMION
HARRIS, and LEE ANN MILLER, individually
and on behalf of all others similarly situated,

Plaintiffs,

v.

GENERAL MOTORS, LLC,                          C.A. No. 1:20-cv-01137-SB

Defendant.

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO GENERAL MOTORS LLC'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Steven R. Weinmann                    Russell D. Paul (Bar No. 4647)
Tarek H Zohdy                         Amey J. Park
Cody R. Padgett                       Abigail J. Gertner
**CAPSTONE LAW APC**                  **BERGER MONTAGUE PC**
1875 Century Park East, Suite 1000    1818 Market Street, Suite 3600
Los Angeles, California 90067         Philadelphia, PA 19103
Tel:  (310) 556-4811                  Tel.:  (215) 875-3000
Fax:  (310) 943-0396                  Fax:   (215) 875-4604
Steven.Weinmann@capstonelawyers.com   Email: rpaul@bm.net
Tarek.Zohdy@capstonelawyers.com              apark@bm.net
Cody.Padgett@capstonelawyers.com             agertner@bm.net

Michael K. Yarnoff (Bar No. 3321)
**KEHOE LAW FIRM, P.C.**
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102
Tel: (215) 792-6676
Email:  myarnoff@kehoelawfirm.com

*Attorneys for Plaintiffs and the Class*

February 12, 2021

## TABLE OF CONTENTS

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS .............................................. 1

SUMMARY OF ARGUMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.       Plaintiffs' Consumer Protection Claims Are Properly Pleaded. ........................................ 2

    A.     Plaintiffs plead a fraudulent omission under the state consumer laws. ................................................................................................................... 2

    B.     Plaintiffs adequately allege GM's knowledge of the Defect. ................................ 4

        1.     Class Members' complaints to the National Highway Traffic Safety Administration and elsewhere support GM's knowledge. ................................................................................................ 5

        2.     GM's technical bulletin supports Plaintiffs' knowledge allegations. ....................................................................................... 7

        3.     Plaintiffs' allegations regarding testing data further support knowledge. ....................................................................................... 8

        4.     Allegations regarding GM's redesign of the system support knowledge. ....................................................................................... 9

    C.     Plaintiffs adequately allege reliance. ............................................................... 10

    D.     The claims of Plaintiffs Previti and Loadholtes are timely .............................. 11

II.      Plaintiffs Adequately Plead Breach Of Express Warranty ............................................. 12

    A.     Plaintiffs allege the Defect existed within the Warranty's limits. ....................... 12

    B.     Plaintiffs adequately plead the Warranty's durational limits are unconscionable. ............................................................................................... 14

III.     Plaintiffs Adequately Plead Breach Of Implied Warranty ............................................. 15

    A.     Durational limitation on implied warranty is ineffectual and unconscionable. ............................................................................................... 15

    B.     The vehicles were not fit for their intended purpose and were unmerchantable. ............................................................................................. 15

    C.     There is no one-year requirement under the Song-Beverly Act or reasonable opportunity to repair requirement. ...................................... 16

IV.      Plaintiffs' Magnuson-Moss Warranty Act Claims Succeed ........................................... 17

V.       Florida Plaintiffs Plead Privity/3rd Party Beneficiary Status ......................................... 18

VI.      Plaintiffs Have Adequately Pleaded Unjust Enrichment Claims ..................................... 19

VII.     Discovery Should Not Be Stayed ................................................................................... 20

CONCLUSION ...................................................................................................................... 20

2

## TABLE OF AUTHORITES

CASES

*Alban v. BMW of N. Am.*, 2011 WL 900014 (D.N.J. Mar. 15, 2011) ........................................... 14

*Anthony Allega Cement Contractor, Inc. v. Johnson Controls Fed. Sys./Versar, LLC*, 2019 WL 1792201 (D. Del. Apr. 24, 2019)................................................................. 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 1

*Ashgari v. Volkswagen Grp. of Am.*, 42 F. Supp. 1306 (C.D. Cal. 2013)............................. 11, 16

*Baker v. Family Credit Counseling Corp.*, 440 F. Supp.2d 392 (E.D. Pa. 2006)...................... 19

*Bolinger v. First Multiple Listing Service, Inc.*, 838 F. Supp. 1340 (N.D. Ga. 2012)................... 3

*Borkman v. BMW of N. Am., LLC,* 2017 WL 4082420.(C.D. Cal. Aug. 28, 2017)...................... 7

*Carlson v. Gen. Motors Corp.*, 883 F.2d 287 (4th Cir. 1989) ..................................................... 15

*Chiarelli v. Nissan N. Am., Inc.*, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) ....................... 10

*DeSimone v. U.S. Claims Servs., Inc.*, 2020 WL 1164794  ( E.D. Pa. March 11, 2020) . ..................................................................................................................... 3

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) ................................................. 2, 16

*Ehrlich BMW Of North America, LLC*, 801 F. Supp. 2d 908C.D. Cal. 2010).............................. 4

*Falco v. Nissan*, 2013 WL5575065. (C.D. Cal. Oct. 10, 2013).................................................... 8

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)................................... 3, 4, 10

*First Flight Ltd. P'ship v. All. Tech. Grp.*, LLC, 2019 WL 343250 (D. Md. Jan. 28, 2019) . ..................................................................................................................... 19

*Francis v. Gen. Motors, LLC*, 2020 WL 7042935 (E.D. Mich. Nov. 30, 2020) .................. 19, 20

*Gelis v. BMW*, 2018 WL 6804506 (D.N.J. Oct. 30, 2018) ............................................................ 8

*Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022 (11th Cir. 2017) ............................ 18

*Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ..................... 10

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F.App'x 94 (3d Cir. 2013) ........................... 6, 9

*Grodzitsky v. Am. Honda Motor Co.,* 2013 WL 2631326 (C.D. Cal. June 12, 2013) ................... 6

*Hamm v. Mercedes-Benz USA, LLC*, 2019 WL 4751911 (N.D. Cal. Sept. 30, 2019)................... 2

*Floyd v. American Honda Motor Co. Inc.*, 2020 WL 4331769 (9th Cir. July 28, 2020) . ..................................................................................................................... 17

*Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913 (D.N.J. July 21, 2010) . ..................................................................................................................... 14

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, 2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) ....................................................................................................................... 12

*In re FCA US LLC Monostable Electronic Gearshift Litigation*, 280 F. Supp. 3d 975 (E.D. Mich. Nov. 15, 2017) ........................................................................................ 15, 20

*In re MyFord Touch Consumer Litig.,* 46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................... 5

*In re Samsung DLP Television Class Action Litig,*, 2009 WL 3584352 (D.N.J. Oct. 27, 2009) . ..................................................................................................................... 14

*In re Takata Airbag Products Liab. Litig.*, 2017 WL 775811 (S.D. Fla. February 27, 2017) ................................................................................................ 2, 20

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................. 2, 10, 12

*In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2017) ......................................................................................... 14, 19, 20

*J & J Sports Prods., Inc. v. All Star Grill, Inc.*, 2008 WL 11429564 (E.D.N.C. May 7, 2008) ..................................................................................................... 4

*JI-EE Indus. Co. v. Paragon Metals, Inc.*, 2010 WL 1141103 (S.D. Fla. Mar. 23, 2010) . .......................................................................................................... 19

*Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257 (D.N.J. 2011)................................. 17

*Johnson v. Ace Cash Express Inc.*, 2015 WL 4397482 (D. Del. July 17, 2015) ........................... 4

*Juju, Inc. v. Native Media, LLC*, 2020 WL 3208800.(D. Del. June 15, 2020) ............................ 10

*Kuns v. Ford Motor Co.*, 543 F.App'x 572 (6th Cir. 2013)........................................................... 17

*Kunzelmann v. Wells Fargo Bank*, N.A., 2012 WL 2003337 (S.D. Fla. June 4, 2012) . ........................................................................................................... 19

*Lincoln v. Ford Motor Co.*, 2020 WL 5820985.(D. Md. Sept. 29, 2020) ........................ 4, 10, 17

*Long v. Graco Children's Prods. Inc.*, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) . ............................................................................................................... 6

*MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. Mar. 31, 2014)............... 6, 8, 10

*McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013) ................................................... 3

*McQueen v. BMW of N. Am., LLC*, 2013 WL 4607353. (D.N.J. Aug. 29, 2013)............................ 7

*Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427.(D.N.J. 2012) .................................................. 9

*Myers v. BMW of North Am.*, LLC, 2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) ................. 5, 7

*Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558 (D.N.J. 2012) ............................................. 13

*Nomadix, Inc. v. Hosp. Core Servs. LLC*, 2015 WL 3948804 (C.D. Cal. June 29, 2015) . ................................................................................................................ 4

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 2018 WL 3109632 (S.D. Fla. Apr. 5, 2018) ................................................................... 18

*Oliver v. Funai Corp., Inc.*, 2015 WL 9304541.(D.N.J. Dec. 21, 2015)....................................... 6

*Parrish v. Volkswagen Gp. of Am, Inc.*, 2020 WL 4529615 (C.D. Cal., May 7, 2020) . ........................................................................................................... 5, 8, 9

*Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018) ................................. 3

*Peterbrooke Franchising of Am., LLC v. Miami Chocolates, LLC*, 312 F. Supp. 3d 1325 (S.D. Fla. 2018)............................................................................................ 3

*Phillips v. Ford Motor Co.*, 2016 WL 1745948 (N.D. Cal. May 3, 2016) .................................. 17

*Precht v. Kia*, 2014 WL 10988343 (C.D. Cal. Dec. 29, 2014)..................................................... 11

*Razen v. FCA US LLC*, 2019 WL 7482214 (M.D. Fla. Oct. 23, 2019) ...................................... 18

*Robinson v. Kia*, 2015 WL 5334739 (D.N.J. Sept. 11, 2015)..................................................... 17

*Roche v. Volkswagen Group of America Inc.*, 2014 WL 1745050 (S.D. Fla. April

30, 2014) ..................................................................................................... 12

*Salas v. Toyota Motor Sales, U.S.A., Inc.,* 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016) . .................................................................................................................... 4

*Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S. D. Fla. 2014) ............ 19

*Schechter v. Hyundai Motor Am.,* 2019 WL 3416902 (D.N.J. July 29, 2019) ............ 6

*Suddreth v. Mercedes-Benz, LLC,* 2011 WL 5240965. (D.N.J. Oct. 31, 2011) ............ 8

*Tershakovec v. Ford Motor Co.*, 2018 WL 3405245 (S.D. Fla. 2018) ........................ 16

*U Med v. RyMed Techs., Inc.,* 752 F. Supp. 2d 486.(D. Del. 2010) ............................ 9

*Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173 (S.D. Fla 2019) ...................... 18

*Wilson v. Volkswagen Group of America, Inc.*, 2018 WL 4623539 (S.D. Fla. Sept. 26, 2018) ........................................................................................................................ 6

*Woo v. Am. Honda Motor Co., Inc.*, 2020 WL 2768961 (N.D. Cal. May 28, 2020) ................... 16

*Zavala v. Wal-Mart Stores, Inc.,* 393 F. Supp. 2d 295.(D.N.J. 2005) .......................... 8

*Zwiercan v. General Motors Corp.*, 202 WL 31053838 (Ct. Comm. Pleas Sept. 11, 2002) . ...................................................................................................................... 3

## STATE CASES

*Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga.App. 38 (1998) ...................... 3

*Collins v. eMachines, Inc.*, 202 Cal.App.4th 249 (2011) .......................................... 3

*Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824 (Cal. Ct. App. 2006) ...................... 4

*Mexia v. Rinker Boat Co.*, 174 Cal.App.4th 1297 (2009) ................................... 16, 17

*Mocek v. Alfa Leisure, Inc.,* 114 Cal.App.4th 402 (Cal.App.4th Dist. 2003) .............. 17

*Music Acceptance Corp. v. Lofing*, 32 Cal.App.4th 610 (1995) ................................ 16

## FEDERAL STATUTES

Fed. R. Civ. P. 8(d)(2-3) ........................................................................................... 19

Motor Vehicle Safety Act, 49 U.S.C. §30101-30170 ................................................ 2

## STATE STATUTES

Cal. Civ. Code § 1793 .............................................................................................. 15

Cal. Civ. Code § 1793.2 ........................................................................................... 17

Cal. Civ. Code § 1795.91(a) ...................................................................................... 8

Cal. Civ. Code §1793.1(a)(2) .................................................................................... 13

U.C.C.  § 2–314 ....................................................................................................... 16

U.C.C. § 2-719(2) .................................................................................................... 13

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Plaintiffs purchased 2010 to present Chevrolet Camaro vehicles (the "Class Vehicles") from General Motors, LLC ("GM" or "Defendant"). The Class Vehicles are equipped with starters that are prone to premature failure, both within and outside of the warranty periods. The starter motors cannot withstand and are damaged by the heat to which they are exposed, and the heat shields that are supposed to protect the starter motors are inadequate (the "Defect"). Even when GM replaces starter motors, it simply uses the same defective parts, and the problems recur. For example, the starter motor on Plaintiff Talley's 2016 Camaro began failing at only 32,000 miles, and Mr. Talley had to have it replaced. Despite this replacement, the new starter motor likewise began failing only a few thousand miles later. On November 9, 2020, GM moved to dismiss Plaintiffs' Class Action Complaint. For the reasons stated below, GM's motion should be denied.

## SUMMARY OF ARGUMENT

1.      GM had a duty to disclose the Defect because it was a material fact. In fact, as a safety concern, it is *per se* material.

2.      Plaintiffs' allegations of GM's knowledge are sufficient. A party's knowledge or other state of mind need not be plead with particularity and "may be averred generally" *Ashcroft v. Iqbal*, 556 U.S. 662, 687-87 (2009). Rule 9(b)'s heightened standards are relaxed when the facts relevant to omissions are peculiarly within the defendant's knowledge.

3.      Plaintiffs plead reliance in detail, specifying the various channels of information that each Plaintiff reviewed where GM could have, but failed to, disclose the defect.

4.      Plaintiffs' claims are timely, as the discovery rule applies.

5.      Plaintiffs' breach of express and implied warranty claims survive, because Plaintiffs adequately allege GM knew the Defect existed and typically manifests within and/or shortly outside of the warranty period and that when notified, GM either denied warranty coverage or provided ineffective repairs. Plaintiffs' allegations thus support claims that the Defect is covered by and existed during the warranty period, rendered the Class Vehicles

1

unmerchantable, and came with unconscionable durational limits.

6.     Plaintiffs unjust enrichment claims survive because they may plead equitable and damages claims in the alternative. Further, unjust enrichment claims against GM are proper because it sells through its authorized dealerships, who are GM's third-party agents for sales.

## ARGUMENT

## I.     PLAINTIFFS' CONSUMER PROTECTION CLAIMS ARE PROPERLY PLEADED.

### A.     Plaintiffs plead a fraudulent omission under the state consumer laws.

GM's argument that it had no duty to disclose "every aspect of vehicle performance" wrongly posits that only a fiduciary or special relationship is required to impose  any duty to disclose. GM also engaged in an "affirmative act" by selling its cars with "Monroney" window stickers and advertisements that failed to disclose that Defect. ¶¶99, 229.[1] GM's citations it contends hold that "affirmative acts" or a "cover-up" are required for GM to have a duty to disclose the Defect, do not support the proposition that an omission (without an affirmative statement) is never sufficient where there is a duty to disclose, such as where there is a safety defect. GM had a duty to disclose the Defect because it had exclusive and superior knowledge of its existence, and yet concealed the associated safety risk and failed to disclose the safety risks posed by the Defect pre-sale. ¶¶11, 12, 13, 119-147, 227, 230. Under the laws of California, Maryland, Pennsylvania, and Florida, the existence of a safety defect creates a duty to disclose. *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 537 (D. Md. 2011) (holding that duty to disclose safety defects arises under Motor Vehicle Safety Act, 49 U.S.C. §30101-30170); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010); *Hamm v. Mercedes-Benz USA, LLC*, 2019 WL 4751911, at *4 (N.D. Cal. Sept. 30, 2019) (holding a manufacturer has a duty to disclose a defect which poses an unreasonable safety risk); *In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 775811 at *4-5 (S.D. Fla. February 27, 2017)

---

[1] Citations to the First Amended Complaint, D.I. 22, are referenced herein as "FAC" or "¶."

(applying Florida and California law and finding a duty to disclose defective airbag).[2] The Northern District of Georgia also recognized the duty to disclose a defect that the purchaser could not have discovered with reasonable prudence, in a vehicle sale. *See McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013); *accord Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018) (recognizing duty and applying Georgia law).

A defect is in the exclusive and superior knowledge of a seller if the seller "knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Collins v. eMachines, Inc.*, 202 Cal.App. 4th 249, 256 (2011). As alleged, GM had access to a significant amount of information about the Defect that Plaintiffs and the public did not.[3] Materiality is shown where a plaintiff demonstrates that "'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007). Plaintiffs allege the Defect was material because if they had known about it they would not have purchased their vehicles or would have done so for less money. *See, e.g.*, ¶¶13, 18, 28, 39. This is sufficient to show materiality of the omission at the pleading stage. *See, e.g. Loo v. Toyota Motor Sales, USA, Inc.,* 2019 WL 7753448, at *10 (C.D. Cal. Dec. 20, 2019). Plaintiffs allege the Defect constitutes a safety defect because it can cause owners to be stranded in the road and can cause the vehicle to lose power while being driven, causing a crash. ¶11. Multiple complaints from consumers attest that the Defect is a safety concern (¶128), and constitutes an unreasonable safety risk, which courts have found to be *per se* material.

---

[2] *Peterbrooke Franchising of America, LLC v. Miami Chocolates, LLC*, 312 F. Supp. 3d 1325, 1343 (S.D. Fla. 2018) cited by GM involved a franchise agreement, not a defective vehicle, and the court simply found there were no false statement or omissions pleaded. The court in *Bolinger v. First Multiple Listing Service, Inc.*, 838 F. Supp. 1340, 1365 (N.D. Ga. 2012) cited by GM actually upheld the claims under the UDTPA, and *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga.App. 38, 44 (1998), involved a dispute between two businesses, and any misrepresentations did not involve consumers, so the Fair Business Practices Act was inapplicable.

[3] *DeSimone v. U.S. Claims Servs., Inc.*, 2020 WL 1164794 ( E.D. Pa. March 11, 2020) is inapposite as it was held in *Zwiercan v. General Motors Corp.*, 2002 WL 31053838 at *4 (Ct. Comm. Pleas Sept. 11, 2002) that vehicle manufacturers have a duty to disclose defects under the UTPCPL where the manufacturer has knowledge of alleged defects superior to that of the buyer, in that instance, a defective front seat. That knowledge is clearly alleged in the FAC.

*See Lincoln v. Ford Motor Co*., 2020 WL 5820985 at *5-6 (D. Md. September 29, 2020) (holding plaintiff stated claim under MCPA as omission regarding steering defect was material); *Daugherty v. Am. Honda Motor Co*., 144 Cal.App.4th 824, 838 (Cal. Ct. App. 2006). *See also Keegan v. Am. Honda Motor Co., Inc*., 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012) (suspension defect was a safety risk and thus material).

GM took affirmative steps to conceal the Defect from consumers. Concealment lies where a manufacturer withholds information about the systematic nature of a defect. *See Price*, 2011 WL 10948588, at *5. Failure to notify customers, recall the vehicle (as opposed to only responding to customer complaints), or to deal with customer complaints in an honest manner all show active concealment. ¶¶148-152. *See, e.g., Falk*, 496 F. Supp. 2d at 1097; *Salas v. Toyota Motor Sales, U.S.A., Inc.,* 2016 WL 7486600, at *11 (C.D. Cal. Sept. 27, 2016); *Ehrlich BMW Of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010). In addition to this type of concealment, GM touted the safety and reliability of the vehicles even while its own investigation was ongoing. ¶307.

## B.  Plaintiffs adequately allege GM's knowledge of the Defect.

Rule 9(b) does not apply to Plaintiffs' allegations regarding GM's knowledge of the Defect. *Johnson v. Ace Cash Express Inc*., 2015 WL 4397482, at *2 (D. Del. July 17, 2015). This is particularly true "as to matters peculiarly within the opposing party's knowledge that pleader is not privy to at the time the document is being drafted." *J & J Sports Prods., Inc. v. All Star Grill, Inc*., 2008 WL 11429564, at *2 (E.D.N.C. May 7, 2008); *Nomadix, Inc. v. Hosp. Core Servs. LLC*, 2015 WL 3948804, at *6 (C.D. Cal. June 29, 2015) (same). Plaintiffs' allegations need only raise a plausible inference of GM's knowledge regarding the Defect. With that standard in mind, Plaintiffs allege that, before they purchased their vehicles:

> "… GM knew about the Starter Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to GM and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from GM dealers about the problem….
>
> GM is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, GM conducts tests, including pre-sale durability testing, on incoming components, including the starters, to verify the parts are free from defect and align with

GM's specifications....

GM has robust durability testing for pre-production vehicles. As described by GM, "[i]n 18 months, the durability team at General Motors' Milford Proving Group can put a vehicle through an entire lifecycle. Durability tests are long, repetitive and physically demanding.".... As described by GM itself, GM sets "benchmarks a vehicle must endure before the Milford durability team will release it for production," including "100,000 miles of customer use," and placing vehicle in special chambers for hours where the vehicles are exposed to high temperatures and humidity....

¶¶134-141. At the pleading stage, without access to discovery, such allegations are sufficient. *See, e.g., Falk*, 496 F. Supp. 2d at 1096 ("Plaintiffs claim '[o]nly GM had access to [aggregate data from its dealers, testing data, and customer complaints].' When accepted as true for the purposes of this Rule 12(b)(6) motion, plaintiffs' material allegations suffice to state a claim that GM had exclusive knowledge of the alleged defect..."); *Feldman v. Mercedes-Benz USA LLC*, 2012 WL 6596830 *11 (D.N.J. Dec. 18, 2012) (same).

GM asserts Plaintiffs do not allege facts supporting a plausible inference of GM's knowledge. To the contrary, Plaintiffs' allegations are supported by concrete facts establishing GM's knowledge, including: (1) *Class Members' complaints to the National Highway Traffic Safety Administration ("NHTSA") starting in 2010* (¶128); (2) *complaints regarding the subject defect starting in 2014;* (3) *GM's own technical bulletin regarding the defect* (¶¶77, 98, 129-131); and (4) *GM's dealerships' statements regarding GM's efforts to redesign the relevant components.* Courts routinely hold such allegations give rise to a plausible inference of pre-sale knowledge. *See, e.g., Parrish v. Volkswagen Grp. of Am, Inc*., 2020 WL 4529615, at *4-6 (C.D. Cal., May 7, 2020) (collecting cases and providing a detailed discussion regarding pre-sale knowledge).

### 1. Class Members' complaints to the National Highway Traffic Safety Administration and elsewhere support GM's knowledge.

Allegations of customer complaints of the defect provide strong support for knowledge. *See, e.g., In re MyFord Touch Consumer Litig.,* 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014) (finding knowledge pleaded because "[t]hat there were such complaints is substantiated by the NHTSA complaints identified by Plaintiffs"); *Myers v. BMW*, 2016 WL 5897740, *4 (N.D. Cal. Oct. 11, 2016) (two pre-sale NHTSA complaints support knowledge, as "because manufacturers

such as BMW use the NHTSA website to communicate information to consumers, it is reasonable to infer that BMW has knowledge of and is aware of the [NHTSA] complaints.").[4]

Plaintiffs allege automakers like GM monitor customer complaints made to NHTSA as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects (¶¶126-127), and cite complaints to NHTSA dating back to **2010**—years before any Plaintiff purchased their vehicle. *See* ¶128. Plaintiffs provide a sampling of consumer complaints on third party websites—websites Plaintiffs allege GM monitors as a regular practice—where Class Members complained of the Defect regularly, dating back to 2014. In their complaints, Class Members indicated they reported the defect to authorized GM dealerships (*see, e.g.,* ¶¶128(a), 128(c), 128(e), 133(a), 133(b)), who are GM's agents for repair and who notify GM when warranty repairs are performed. ¶¶132, 196. One NHTSA complaint (¶¶128(d)) also indicates GM was facing at least one lemon lawsuit, which further supports knowledge.

GM cites two inapposite cases for the proposition that complaints to NHTSA and elsewhere do not support pre-sale knowledge. For example, in *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.,* 525 F.App'x 94, 104 (3d Cir. 2013) the Court *did not consider the NHTSA complaints,* because plaintiff had "provided no facts to support his assertion that Toyota should have known about the defect based on these complaints." *See also Schechter v. Hyundai Motor Am.,* 2019 WL 3416902, at *6 (D.N.J. July 29, 2019) ("Indeed, Plaintiff merely asserts that these complaints 'demonstrate that the [Powertrain] Defect is widespread and dangerous,' without alleging that Defendants either monitored or tracked the NHTSA's website.") Here, Plaintiffs provide detailed allegations regarding why GM reviews NHTSA complaints. ¶¶126-127. Likewise, *Oliver v. Funai Corp.,* 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015) did not involve NHTSA complaints at all, and, as in *Gotthelf*, the *Oliver* court found they did not support knowledge because "Plaintiffs have provided no indication that Defendants viewed or would have viewed those websites." Here, by

---

[4] *See also MacDonald v. Ford Motor Co.,* 37 F Supp.3d 1087, 1093 (N.D. Cal. Mar. 31, 2014); *Long v. Graco Children's Prods. Inc.,* 2013 WL 4655763, *6 (N.D. Cal. Aug. 26, 2013); *Grodzitsky v. Am. Honda Motor Co.,* 2013 WL 2631326, at *6 (C.D. Cal. June 12, 2013); *Wilson v. Volkswagen Grp. of Am. Inc.*, 2018 WL 4623539, at *9 (S.D. Fla. Sept. 26, 2018).

contrast, Plaintiffs allege GM monitors such third-party websites and cite an article explaining why that is the case. ¶133 (*See* Read, Richard, "Taking your car complaint online? Chrysler, GM, and Ford will see it.", *Christian Science Monitor*, Aug. 21, 2012…").

Likewise, in *McQueen v. BMW,* 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013), plaintiff owned a vehicle that was *not* equipped with the "Comfort Access System" system NHTSA had found was defective, and relied primarily on complaints regarding vehicles that, unlike hers, were so equipped. *Id.* Moreover, plaintiff in *McQueen* "merely asserted in a conclusory manner that BMW was aware" of the defect. *Id.* Here, by contrast, Plaintiffs allege GM's pre-sale knowledge in detail. Finally, GM's arguments that Plaintiffs do not plead pre-sale knowledge because only a small number of NHTSA complaints pre-dated Plaintiffs' purchases are unavailing. *See, e.g.*, *Myers*, 2016 WL 5897740, *4 (N.D. Cal. Oct. 11, 2016) (two pre-sale NHTSA complaints support knowledge); *Borkman v. BMW of N. Am., LLC,* 2017 WL 4082420, at *5 (C.D. Cal. Aug. 28, 2017) ("With respect to consumer complaints, eight were posted on the NHTSA website, 12 on third-party websites, and three complaints pre-date plaintiffs' purchase of her vehicle [citations omitted]. Such allegations are sufficient at this stage of the litigation.").[5]

### 2.    GM's technical bulletin supports Plaintiffs' knowledge allegations.

Plaintiffs further support their allegations with GM's own technical bulletin, which GM issued secretly, only to its dealerships, as "Document ID: 2910613." Plaintiffs allege on information and belief that this technical bulletin is an "internal GM communication to its

---

[5] Finally, *Wilson* stands only for the proposition that a handful of mostly undated customer complaints, without more, are insufficient to establish pre-sale knowledge. Indeed, *Wilson* distinguished its allegations from those in *Falk v. Ford*, 496 F. Supp. 2d 1088 (N.D. Cal. 2017), an automotive defect action more in line with the instant case. "The *Falk* court, however, considered 'the amassed weight of [customer] complaints' together with other indications that Ford had knowledge of the defect." *Wilson*, 668 F.3d at 1147; *see also id.* at 1167 (discussing with approval the allegations in *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *3 (C.D. Cal. June 12, 2009), another auto defect case.) Similarly, in *Morris v. BMW of N. Am., LLC*, 2014 WL 793550, at *6 (D.N.J. Feb. 26, 2014), unlike here, Plaintiffs' allegations were not supported by facts. Finally, in *Resnick v. Hyundai Motor Am., Inc.*, 2016 WL 9455016, at *13 (C.D. Cal. Nov. 14, 2016), Plaintiffs alleged only that there existed "concerns" regarding paint peeling, and failed to even allege "whether the concerns were ever communicated to Hyundai."

authorized dealerships which details the replacement of the starter in Class Vehicles due to heat damage from the engine." ¶131. Courts routinely hold the issuance of a Technical Service Bulletin supports an inference that the manufacturer knew of the defect for years before issuance. For example, the court in *Falco v. Nissan*, 2013 WL5575065, at *5-6 (C.D. Cal. Oct. 10, 2013) found a TSB issued in mid-2007 raised an inference of the defendants' knowledge at the time of sale in 2005.[6]

GM cites *Zavala v. Wal-Mart,* 393 F. Supp. 2d 295, 313 (D.N.J. 2005) for the proposition that this bulletin does not support knowledge because Plaintiffs allege its contents under information and belief. However, Rule 9(b) does not apply to knowledge allegations, particularly as to matters peculiarly within the opposing party's knowledge that pleader is not privy to at the time the complaint is being drafted, which is precisely the situation here.

GM further sites Cal. Civ. Code § 1795.91(a) and *Suddreth v. Mercedes-Benz, LLC,* 2011 WL 5240965, at *3 n.3 (D.N.J. Oct. 31, 2011) for the proposition that the technical bulletin should not be construed as an "admission" of the existence of a defect, and that it is merely "a document disseminated internally that informs [] technicians how to diagnose and repair the ***identified problem***" (emphasis added). GM's bulletin thus *supports* Plaintiffs pre-sale knowledge allegations, as the bulletin indicates that GM had "*identified*" the defect and thus knew about it. Whether or not the technical bulletin constitutes an "admission" is of no moment.

### 3.    Plaintiffs' allegations regarding testing data further support knowledge.

Plaintiffs enumerate further sources of GM's knowledge, including pre-release testing data and additional testing in response to consumer complaints and data from dealerships about the Defect. ¶¶8, 9, 106, 132, 135-144. Given that Plaintiffs lack access to GM's non-public warranty

---

[6] *See also Gelis v. BMW*, 2018 WL 6804506, at *1, 8 (D.N.J. Oct. 30, 2018) (finding TSB issued in 2017 supports plaintiffs' allegations of BMW's knowledge in 2012-2015); *MacDonald*, 37 F.. Supp.3d at 1094 ("TSBs issued after Plaintiffs' purchases also plausibly give rise to the inference that Ford knew of the issue prior to their issuance") (emphasis added); *Parrish*, 2020 WL 4529615 at *18 ("the Court finds a five-month period between knowledge of the Defect and release of the [Technical Tip] to be plausible at this stage.")

data, Plaintiffs' allegations plausibly support knowledge.[7] Relying on *Gottlief,* 525 F.App'x 94, GM argues Plaintiffs' allegations are conclusory, because Plaintiffs do not specify the person within the GM organization who reviewed the complaints, the date they were reviewed, or other facts in report. Not so. In addition to the allegations regarding why GM reviews NHTSA complaints and third-party complaints discussed *supra,* Plaintiffs specify that GM's customer relationships department collects and analyzes field data and lists such relevant categories of data that GM tracks, which conferred knowledge. ¶140. Plaintiffs also specify that GM's warranty department analyzes and collects data submitted by GM's dealerships to identify trends in its vehicles, details regarding GM's policies with respect to documentation of problems identified by the dealerships and the fix employed, and details regarding pre-production testing. ¶¶141-143. This also conferred knowledge. Thus, given that Plaintiffs provide specific facts, GM's citation to *U Med v. RyMed Techs., Inc.,* 752 F. Supp. 2d 486, 497 (D. Del. 2010) is unavailing.

### 4.  Allegations regarding GM's redesign of the system support knowledge.

Finally, GM has redesigned the starter motor system in an effort to remedy the Defect, but due to demand, GM has been unable to supply the improved parts. ¶143. On multiple occasions, at separate facilities, GM's authorized dealerships admitted these facts to Plaintiffs Franzen and Loadholtes. *Id.* These allegations provide strong support for Plaintiffs' allegations that GM knew of the Defect. Indeed, for an automaker to redesign components to remedy a defect, it must first discover the existence of the defect, conduct testing and analysis to identify the defect's root cause, consider whether to issue a remedy, develop said remedy, produce the replacement components, and finally deliver them to its dealerships. These allegations thus support Plaintiffs' allegations that GM knew of the Defect before Plaintiffs' purchases, which began in 2016. GM argues these

---

[7] *See, e.g., Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 444 (D.N.J. 2012) (allegations of Ford's "access to technical and scientific information" supports knowledge); *Apodaca v. Whirlpool Corp.,* 2013 WL 6477821, at *8 (C.D. Cal. Nov. 8, 2013) (Florida omissions claims survived based on allegations of "testing at the design stage that would have revealed the alleged defect and numerous consumer complaints of the defect.") *Parrish*, 2020 WL 4529615 at *13-15 (finding similar "Testing and Data" allegations sufficient).

allegations should be disregarded because GM's dealerships are not parties. However, GM's network of authorized dealerships are GM's agents for performing repairs under warranty and they communicate with GM regarding defects. ¶196, 200, 276.

### C.   Plaintiffs adequately allege reliance.

Rule 9(b)'s requirements for Plaintiffs' consumer protection claims are "relaxed…when factual information [about the alleged fraud] is peculiarly within the defendant's knowledge or control[], so long as the plaintiff pleads facts alleging that the necessary information lies within defendants' control, and [accompanies] their allegations ... [with] a statement of the facts upon which the allegations are based." *See Juju, Inc. v. Native Media, LLC*, 2020 WL 3208800, at *8 (D. Del. June 15, 2020), *report and recommendation adopted*, 2020 WL 4001059 (D. Del. July 15, 2020.[8] Here, each Plaintiff's allegations easily satisfy this standard. *See MacDonald v. Ford Motor Co.,* 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014):

> "Plaintiffs adequately allege the "who what when and how," given the inherent limitations of an omission claim. In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the "where" is the various channels of information through which Ford sold Class Vehicles."

GM selectively quotes the beginning of Plaintiff Talley's allegations regarding reliance but omits the remainder of the paragraph, where Talley (and the rest of the named plaintiffs) enumerate the multitude of information channels that they reviewed and relied on when making their purchasing decision—sources where GM could have disclosed but instead omitted information about the Defect. These include GM's official website regarding the

---

[8] *See also Chiarelli v. Nissan N. Am., Inc.*, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) (omissions-based claims under state consumer protection statutes, including under Florida and Maryland state laws, adequately supported with allegations that defendant omitted information about the defect, which was in defendant's sole possession and was relevant to plaintiffs); *Lincoln v. Ford Motor Co.,* 2020 WL 5820985, at *12 (D. Md. Sept. 29, 2020) ("Federal courts applying Maryland law have adopted a more relaxed Rule 9(b) standard 'in fraudulent concealment cases where the concealment involves omissions of material fact,' because 'omissions cannot be described in terms of the time, place, and contents of the misrepresentation'."). *Falk v. General Motors Corporation*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007; *Gold v. Lumber Liquidators, Inc*., 2015 WL 7888906 at *10 (N.D. Cal. Nov. 30, 2015); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1189 (citations omitted).

Chevrolet Camaro (¶¶17, 51, 63, 84), GM's advertisements regarding the Camaro on television, radio, and the internet (¶73, 84), salespersons at GM's authorized dealerships, including during Plaintiffs' test drives (¶¶17, 27, 38, 51, 63, 73, 84), through GM's authorized dealerships' websites (¶¶27, 63), through public online forums and websites (¶¶27, 38, 63, 73), and through a large array of informational outlets, including automotive-focused websites such as Edmunds.com, Cars.com, Motor Trend, and Car and Driver, through which GM broadly disseminates information regarding the characteristics, benefits, and quality of the Class Vehicles. ¶¶17, 27, 73. Plaintiffs relied on these omissions. ¶¶13, 156, 180, 183, 230, 304, 312, 438, 440. These specific allegations more than adequately allege Plaintiffs' reliance on materials and information channels that omitted information about the Defect, in satisfaction of Rule 9(b). *Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1226 (9th Cir. 2015); *see also Precht v. Kia,* 2014 WL 10988343, at *6 (C.D. Cal. Dec. 29, 2014).

### D.     The claims of Plaintiffs Previti and Loadholtes are timely

Plaintiff Previti's claims under the CLRA and UCL are timely. GM argues Previti's claims are barred because he did not join this lawsuit until December 7, 2020. Brief[9] at 10. However, the discovery rule applies to both claims, and he lacked the requisite knowledge to assert his claims until after March 23, 2019, when a GM dealer technician diagnosed and replaced a defective starter, but the problems, now associated with the starter, continued to occur. ¶¶43-46. Since he then brought his claim within less than two years of becoming aware of the Defect, and the CLRA and UCL statutes of limitation are three and four years respectively, his claim is timely. The very cases that GM relies upon, including *Ashgari v. Volkswagen Group of America,* 42 F. Supp. 1306, 1322 (C.D. Cal. 2013), acknowledge the discovery rule applies, contrary to GM's misleading citation—*Ashgari* cites cases stating that the four-year limit would run from purchase "absent" the application of the discovery rule. Plaintiffs plead the "time and manner of discovery" and "their

---

[9] Opening Brief in Support of Defendant General Motors LLC's Motion to Dismiss the First Amended Complaint and Motion to Stay Discovery Pending Review, D.I. 24, is referenced herein as "Brief."

inability to make earlier discovery despite reasonable diligence." *See supra* section I.B. re GM's exclusive and superior knowledge. Thus, the discovery rule applies here. Similarly, the Loadholtes' FDUPTA claims are timely. Plaintiffs pleaded facts supporting GM's active fraudulent concealment for both Previti and the Loadholtes' circumstances. *See* ¶¶153-157.[10]

## II.    PLAINTIFFS ADEQUATELY PLEAD BREACH OF EXPRESS WARRANTY

To establish a claim for breach of express warranty under the UCC, a plaintiff need only show that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *See, e.g., Newman v. Axiom Worldwide,* 2010 WL 2265227, at *3 (D.N.J. June 2, 2010). GM breached the express warranty because it "repaired" the vehicles by replacing defective parts with other defective parts, thereby ensuring that the Defect would eventually manifest outside of the express warranty period. *See e.g.* ¶¶ 6, 12, 486(d). Doing so constitutes a breach of the express warranty. *See In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1177-78 (holding allegations that purported repairs in warranty were themselves defective sufficient to fall within the scope of the "repair or adjustment" limited warranty); *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, 2012 WL 2861160, at *4-6 (S.D. Cal. Feb. 13, 2012)(express warranty claims survived where Plaintiffs alleged they received replacement phones afflicted with the same defects).

### A.    Plaintiffs allege the Defect existed within the Warranty's limits.

GM contends Plaintiffs' express warranty claims fail for (1) an alleged failure to present their vehicles for repair, (2) but also for taking their vehicles in for repair, (3) for having repairs performed under warranty, (4) but also for not having repairs performed under warranty, (5) and for having repairs performed with non-GM components. Brief at 11-12. If GM's arguments are accepted, why does GM even issue a warranty, and how could it ever be breached? In reality, the

---

[10] The Court in *Speier-Roche v. Volkswagen Group of America Inc*., 2014 WL 1745050 (S.D. Fla. April 30, 2014) recognized the applicability of the doctrine but the plaintiff there, unlike here, was found to simply not have adequately alleged the requisite circumstances.

Warranty requires GM to "correct any vehicle defect" for three years or 36,000 miles. ¶5. GM's argument ignores Plaintiffs' allegations that the Defect existed in all Class Vehicles and was known to GM at the time of sale, which is not only within but actually prior to the Warranty period. ¶¶7, 116, 209, 216, 256, 259, 285, 291, 340, 346, 412, 418, 464,474. Such allegations are sufficient. *See Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 565 (D.N.J. 2012).

Nevertheless, Plaintiffs provide additional support. Plaintiffs Talley and Previti had warranty replacements performed on their vehicles ¶¶20, 44. According to GM, having the replacement—what GM ludicrously calls "repairs"—performed under warranty bars them from alleging a breach of express warranty. Brief at 12. Not so, because their vehicles were not repaired and continued to manifest the alleged Starter Defect. ¶22, 45-46. GM's replacement of some of the Plaintiffs' starters and related components at no cost is irrelevant, because replacement with equally defective parts causes the Warranty to fail of its essential purpose of providing the bargained-for remedy. *See* U.C.C. § 2-719(2) (limited remedy that fails its essential purpose is nullified). Plaintiff Talley's vehicle continued to malfunction shortly after his first warranty repair, and Plaintiff Franzen's vehicle failed within one year and 18,000 miles of her purchase (not 15,000 miles after warranty coverage as incorrectly stated by Defendant (*see* ¶25).) In California, when a defect exists within warranty, such as alleged by all Plaintiffs here, the warranty does not expire under that defect is repaired. Cal. Civ. Code §1793.1(a)(2). Further Plaintiffs Miller, Seale, and Loadholtes' failure to state mileage or requiring replacements *after* the bumper-bumper warranty is a red-herring, as they alleged that the Defect existed when they purchased their vehicle.

Finally, GM takes issue with Plaintiffs Franzen and Seale having repairs performed at non-GM facilities or with non-GM components. However, Plaintiff Franzen gave GM an opportunity to repair her vehicle and GM refused or was unable to, and then attempted to charge Plaintiff Franzen a premium for out-of-pocket repairs for a defect that GM's authorized repair facility confirmed was known and unable to be fixed. ¶¶29-32. Plaintiff Seale was denied warranty coverage on multiple occasions, and his vehicle was initially diagnosed and "repaired" by an authorized repair facility; only after that did Seale decide to pursue repairs on his own. ¶¶53-57.

### B.   Plaintiffs adequately plead the Warranty's durational limits are unconscionable.

Even had Plaintiffs failed to present their vehicles for warranty visits, Plaintiffs plead unconscionability by alleging GM knew the Defect typically manifests within and/or shortly outside of the warranty period; that GM failed to disclose the Defect to consumers; and that GM intentionally offers temporary, ineffectual fixes until the Warranty periods expire. ¶¶198, 274, 329, 401 456. S*ee Skeen v. BMW,* 2014 WL 283628, at *15 (D.N.J. Jan. 24, 2014)(disagreeing with *Alban v. BMW of N. Am*., 2011 WL 900014 (D.N.J. Mar. 15, 2011), and finding unconscionability allegations sufficed where plaintiffs pleaded defendants knew about defect before or shortly after initial sales; that warranty did not disclose the defect; that defendants affirmatively misled plaintiffs reporting engine problems; and defendants did so intentionally to allow warranty to expire); *Carlson*, 883 F.2d at 296 (dismissal of implied warranty claims reversed on similar grounds); *In re Samsung DLP Television Class Action Litig*,, 2009 WL 3584352 at *5 (D.N.J. Oct. 27, 2009) (holding plaintiffs properly pleaded express warranty unconscionable where manufacturer knowingly sold a defective product). Further, Plaintiffs also adequately plead procedural unconscionability by alleging they "had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM," and that "gross disparity in bargaining power existed between GM and the Class members." ¶¶ 100.[11] Because Plaintiffs sufficiently allege unconscionability, GM's arguments concerning the time and mileage limitations are inappropriate for resolution at the pleadings stage. *See In re Volkswagen Timing Chain Prod. Liab. Litig*., 2017 WL 1902160 at *11 (D.N.J. May 8, 2017).[12]

---

[11] *See Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *9 n.6 (D.N.J. July 21, 2010). "[U]nconscionability claims should but rarely be determined on the bare-bones pleadings—that is, with no opportunity for the parties to present relevant evidence of the circumstances surrounding the original consummation of their contractual relationship." *Carlson*, 883 F.2d at 292. A court "will be equipped to address [unconscionability] only *after* plaintiffs have had an opportunity . . . to present evidence that, for example, they had no 'meaningful choice' but to accept the limited warranties, or that the durational limitations 'unreasonably' favored the defendant." *Id*. at 293 (emphasis in original).

### III.    PLAINTIFFS ADEQUATELY PLEAD BREACH OF IMPLIED WARRANTY

#### A.    Durational limitation on implied warranty is ineffectual and unconscionable.

GM argues that Plaintiffs' implied warranty claims should be dismissed because GM limited such warranties to the duration of GM's express warranty period and Plaintiffs' claims fall outside that period. Brief at 13 - 24.[13] However, Plaintiffs' claims survive because Plaintiffs have properly alleged that the durational limit of the implied warranties is unconscionable. Plaintiffs respectfully rely on their discussion of unconscionability above.

Plaintiffs amply allege that the time/mileage limitations imposed by GM on implied warranties are unconscionable and thus unenforceable. GM knew (or should have known) of the Defect, concealed it from consumers, and limited the warranties, through time/mileage limitations, so GM could deny Plaintiffs and class members protection. ¶¶ 198, 274, 329, 401 456.

Plaintiffs' allegations provide a "plausible basis" to find GM's implied warranty limitations unconscionable. *Carlson v. Gen. Motors Corp*., 883 F.2d 287, 294-96 (4th Cir. 1989) (finding allegations of "unequal bargaining power," "no meaningful alternative to accepting [a defendant's] attempted limitation of the duration of the implied warranty," and a defendant's knowledge of inherent defects in its vehicles, but failure to warn customers of the likelihood of failure are facts which, if proven, would show unconscionability); ¶¶ 198, 274, 329, 401 456. Plaintiffs are entitled to an opportunity to present evidence for these allegations. *See Carlson,* 883 F.2d at 293.

#### B.    The vehicles were not fit for their intended purpose and were unmerchantable.

Plaintiffs complaint alleges that the vehicles provide *unreliable* and unsafe transportation. *E.g.*, ¶¶ 3, 5, 14-93. Courts have recognized that a vehicle's failure to drive safely and reliably can render it unmerchantable. *In re FCA US LLC Monostable Elec. Gearshift Litig.* 280 F. Supp. 3d 975, 1015 (E.D. Mich. Nov. 15, 2017) ("the decisions on point in implied warranty cases concerning defective cars have recognized that merchantability implies not only that a vehicle can provide transportation, but that it can do so in a reasonably safe and controlled manner."). *Accord*

---

[13] California law specifically forbids any such limitation. Cal. Civ. Code §1793.

*Tershakovec v. Ford Motor Co.*, 2018 WL 3405245, at \*1, 6 (S.D. Fla. 2018); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1339 (C.D. Cal. 2013).

The U.C.C. adopted by all relevant states defines merchantability as the quality where goods "are fit for the ordinary purposes for which such goods are used." *See* U.C.C. § 2–314. "To determine the ordinary purpose, courts look to the customary expectations and use of the particular good. Since cars are designed to provide transportation, their ordinary purposes are to transport the purchaser along any highway in a safe manner." *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011) (citations omitted).[14] Practically speaking, a vehicle's purpose is safe reliable transportation, and a vehicle that cannot start cannot provide transportation. *See id.* Finally, GM's argument that Plaintiffs failed to allege a defect at the time of sale is patently false. As stated herein, Plaintiffs repeatedly allege that the Starter Defect was inherent and present at the time of sale. ¶¶ 7, 116, 209, 216, 256, 259, 285, 291, 340, 346, 412, 418, 464, 474.

### C.    There is no one-year requirement under the Song-Berly Act or reasonable opportunity to repair requirement.

There is no one-year manifestation requirement for a breach of implied warranty for a latent defect. *See Mexia v. Rinker Boat Co.*, 174 Cal.App.4th 1297, 1304–05 (2009) (concluding that "a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect [at the time of sale], not by its subsequent discovery"). The Ninth Circuit has also dismissed this very argument. *See Daniel*, 806 F. 3d at 1222–23 ("*Mexia's* . . . rule that §1791.1'does not create a deadline for discovering latent defects or for giving notice to the seller,' (citation omitted), must be followed."). Further, a consumer need not afford a vehicle manufacturer any opportunity to repair a vehicle to make a claim for breach of an implied warranty. *See Music Acceptance Corp. v. Lofing*, 32 Cal.App.4th 610 (1995) (specifically rejecting the

---

[14] *See also Carlson*, 883 F.2d at 297 ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects."); *Woo v. Am. Honda Motor Co., Inc.*, 2020 WL 2768961 (N.D. Cal. May 28, 2020) (sustaining breach of the implied warranty of merchantability where purchasers alleged defective vehicles display screens which compromised driver's ability to operate their vehicles safely).

argument that the reasonable opportunity to repair requirement of Cal. Civ. Code § 1793.2 applies to an alleged breach of implied warranty); *Mocek v. Alfa Leisure, Inc.,* 114 Cal.App.4th 402, 407 (Cal.App.4th Dist. 2003) (finding reasonable opportunity to repair "does not apply to the breach of implied warranty of merchantability"); *see also Mexia,* 174 Cal.App.4th at 1307 (concluding there is no "requirement that the buyer allow the seller or manufacturer an opportunity to repair the product prior to bringing an action for breach of the implied warranty of merchantability"). Finally, courts have recognized that equitable tolling principles—including fraudulent concealment tolling—apply to the statute of limitations for implied warranty of merchantability claims. *See, e.g.*, *Phillips v. Ford Motor Co*., 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) ("A number of other courts have found that, when properly pleaded, fraudulent concealment tolls the statute of limitations for claims brought under the Song-Beverly Act.")

## IV.   PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS SUCCEED

Plaintiffs' Magnuson-Moss Warranty Act claim succeed because their express and implied warranty claims succeed. *See, e.g., Lincoln v. Ford Motor Co*., 2020 WL 5820985, at *11 (D. Md. Sept. 29, 2020). Further, "Courts routinely permit putative class actions with fewer than 100 named plaintiffs to proceed with MMWA claims where, as in this case, the court has jurisdiction under some other statute." *Kearney v. BMW AG,* 2018 WL 4144683, at *17 (D.N.J. Aug. 29, 2018); *see also Kuns v. Ford Motor Co.,* 543 F.App'x 572, 574 (6th Cir. 2013) ("the CAFA effectively supersedes the MMWA's more stringent jurisdictional requirements."); *Robinson v. Kia*, 2015 WL 5334739, at *14 (D.N.J. Sept. 11, 2015) (sustaining MMWA claims with five named plaintiffs); *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 n.4 (D.N.J. 2011); *but cf. Heather Floyd v. Am. Honda Motor Co. Inc. et al*., 2020 WL 4331769 (9th Cir. July 28, 2020).[15]

---

[15] As described by the District of Minnesota, *Floyd* does not explicitly consider where a federal court could be a "court of competent jurisdiction in any State," if it has some other source of subject matter jurisdiction, such as Class Action Fairness Act, as Plaintiffs have pleaded here. *See Barclay v. ICON Health & Fitness, Inc.*, 2020 WL 6083704, at *7 (D. Minn. Oct. 15, 2020) (citing cases and declining to follow *Floyd*).

## V.      FLORIDA PLAINTIFFS PLEAD PRIVITY/3RD PARTY BENEFICIARY STATUS

GM misstates applicable Florida case law holding privity is satisfied "when a manufacturer directly provides a warranty to, or otherwise had direct contact with, a buyer who purchases from a third party." *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017). Plaintiffs Seale and Loadholtes allege GM provided warranties when they purchased their Camaros from authorized Chevrolet dealerships, that GM provided warranties directly to Plaintiffs, and that these warranties were a basis of the bargain in their decision to purchase their vehicles. ¶49 (Seale purchased a used Camaro with 17,000 miles from an authorized dealer and GM's original warranties with that vehicle transferred to Seale); 61 (Loadholtes purchased a new vehicle from authorized dealer); 98 (GM provides warranties directly to consumers); 325 (Defendant's NVLW and other warranties were basis of the bargain). No more is required. *See Razen v. FCA US LLC*, 2019 WL 7482214, *4 (M.D. Fla. Oct. 23, 2019) ("The allegation that Defendant directly provided Plaintiff with these warranties satisfies Plaintiff's burden at this stage."); *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 2018 WL 3109632, at *6 (S.D. Fla. Apr. 5, 2018) (contractual privity where written warranties provided).

Further, Plaintiffs are third party beneficiaries of the contracts between GM and its dealerships and of GM's express warranties, including the NVLW. ¶¶98; 99; 343. As discussed in *Razen*, the direct contacts are established through the manufacturer providing the warranty directly to consumers, as well as an agency relationship between the authorized dealer and the manufacturer. Although merely pleading that GM provided the warranties directly to the Florida Plaintiffs is sufficient at this stage to satisfy privity, Plaintiffs have also alleged that GM-authorized dealerships are agents of GM due to the amount of GM's control over these dealerships sufficient to establish an agency relationship and thus meet the alternative standard that privity is established where there is direct contact between manufacturer and consumer. ¶¶ 98; 99; 343. This is also sufficient to establish an exception to the privity requirement, such that Plaintiffs' implied

warranty claims survive.[16]

## VI.    PLAINTIFFS HAVE ADEQUATELY PLEADED UNJUST ENRICHMENT
CLAIMS

Ample legal authority permits Plaintiffs to plead unjust enrichment claims in the

alternative, and dismissal of such claims at this stage is premature. *See Anthony Allega Cement*

*Contractor, Inc. v. Johnson Controls Fed. Sys./Versar, LLC*, 2019 WL 1792201, at *7 (D. Del.

Apr. 24, 2019); Fed. R. Civ. P. 8(d)(2-3).[17] Indeed, "alternative pleading of contract and quasi-

contract claims routinely is permitted, and particularly is appropriate, where the defendant

explicitly disclaims the availability of a contractual remedy, as it has done here by vigorously

asserting its warranty coverage defense." *Francis v. Gen. Motors, LLC*, 2020 WL 7042935, at *23

(E.D. Mich. Nov. 30, 2020) (rejecting GM's argument that existence of express warranty barred

plaintiffs' unjust enrichment claims asserted under laws of 32 states including California, Florida,

Georgia, Maryland, and Pennsylvania). GM also erroneously argues that Plaintiffs' claims must

be dismissed because they did not purchase their vehicles directly from GM[18] and because they

bought their cars from third-party dealerships. However, "[t]o assert a prima facie cause of action

for unjust enrichment a plaintiff must allege that: (1) at plaintiffs [*sic*] expense (2) defendant

received a benefit (3) under circumstances that would make it unjust for defendant to retain the

benefit without paying for it." *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *22 (internal

---

[16] *See Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1182-84 (S.D. Fla 2019); *Ohio State Troopers Ass'n, Inc.*, 2018 WL 3109632, at *7 (finding plaintiffs could also proceed under third party beneficiary exception); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014)) (allowing plaintiff to pursue implied warranty claims through third-party beneficiary allegation); *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *16 (finding third party beneficiary exception applied under Florida law).

[17] *See also Kunzelmann v. Wells Fargo Bank*, N.A., 2012 WL 2003337, at *6 (S.D. Fla. June 4, 2012) ("even though Plaintiff may not recover on both theories, it would be premature to dismiss Plaintiff's unjust enrichment claim at this point*); JI-EE Indus. Co. v. Paragon Metals, Inc.*, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) ("Plaintiff is not prevented from pursuing the alternative claims of breach of contract, unjust enrichment and promissory estoppel in separate counts."); *First Flight Ltd. P'ship v. All. Tech. Grp.*, LLC, 2019 WL 343250, at *2-3 (D. Md. Jan. 28, 2019); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006).

[18] GM solely cites to cases applying New Jersey law, which is not applicable in this case.

quotations omitted). Plaintiffs have pleaded each of these elements by alleging GM's relationship with and control over the dealerships it authorizes to market, sell, and repair GM vehicles, as well as the direct and substantial financial benefits GM receives, including net automotive sales through those dealerships, for its North American region in 2019, totaling $106,366,000. ¶¶105-106. Plaintiffs from California, Florida, Georgia, Maryland, and Pennsylvania acquired Class Vehicles from these authorized dealerships. ¶¶15, 25, 49, 61, 71, 82. Plaintiffs conferred a direct benefit on GM by purchasing the Class Vehicles from an authorized dealership —which GM confirmed is "critical to [its] success." ¶106. These allegations suffice to state a claim for unjust enrichment.[19]

## VII.   DISCOVERY SHOULD NOT BE STAYED

As set forth in Plaintiffs' Response to GM's Motion to Strike Class Allegations, Section V, which is incorporated herein by reference, discovery should not be stayed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny GM's Motion to Dismiss.

Dated:  February 12, 2021

Respectfully submitted,

/s/ Russell D. Paul
Russell D. Paul (Bar No. 4647)
Amey J. Park (admitted pro hac vice)
Abigail J. Gertner (admitted pro hac vice)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604

---

[19] See In re Takata Airbag Prod. Liab. Litig., 255 F. Supp. 3d 1241, 1261 (S.D. Fla. 2017) (citing unjust enrichment laws of California, Florida, and Georgia, among other states; holding "Plaintiffs have sufficiently alleged that [plaintiffs] did confer a direct benefit on Honda by purchasing their vehicles from a Honda dealership."); In re FCA US LLC Monostable Elec. Gearshift Litig., 280 F. Supp. 3d 975, 1008-09 (E.D. Mich. 2017) (similar, citing Pennsylvania law); In re Volkswagen Timing Chain, 2017 WL 1902160, at *22 (upholding unjust enrichment claims brought under the laws of 22 states, including California, Florida, Georgia, Maryland, and Pennsylvania); Francis v. Gen. Motors, LLC, 2020 WL 7042935, at *23 (E.D. Mich. Nov. 30, 2020) (similar).

Email: rpaul@bm.net
        apark@bm.net
        agertner@bm.net

Steven R. Weinmann (admitted *pro hac vice*)
Tarek H. Zohdy (admitted *pro hac vice*)
Cody R. Padgett (admitted *pro hac vice*)
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Tel.: (310) 556-4811
Fax: (310) 943-0396
Email:
Steven.Weinmann@capstonelawyers.com
Tarek.Zohdy@capstonelawyers.com
Cody.Padgett@capstonelawyers.com

Michael K. Yarnoff (Bar No. 3321)
KEHOE LAW FIRM, P.C.
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102
Tel: (215) 792-6676
Email:  myarnoff@kehoelawfirm.com

*Counsel for Plaintiffs and the Class*