IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRIS TALLEY, MARIE FRANZEN,
JESSICA LOADHOLTES, ROBERT
LOADHOLTES, MARK PREVITI, LEE
ANN MILLER, CORY SEALE, AND
DAMION HARRIS, individually and on
behalf of all others similarly situated

                *Plaintiffs*,

       v.

GENERAL MOTORS, LLC,

            *Defendant*.

No. 1:20-cv-01137-SB

---

Russell D. Paul, Amey J. Park, Abigail J. Gertner, BERGER MONTAGUE PC, Philadelphia, Pennsylvania; Tarek H. Zohdy, Cody R. Padgett, CAPSTONE LAW APC, Los Angeles California.

*Counsel for Plaintiffs.*

Oderah C. Nwaeze, FAEGRE DRINKER BIDDLE & REATH LLP, Philadelphia, Pennsylvania; Christine W. Chen, Crystal Nix-Hines, Shon Morgan, Meredith R. Mandell, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Los Angeles, California.

*Counsel for Defendant.*

---

**MEMORANDUM OPINION**

November 26, 2021

---

BIBAS, *Circuit Judge*, sitting by designation.

Plaintiffs hail from five different states. But they are united as buyers of 2016 or 2017 Chevrolet Camaros. And they are not pleased about it. Those cars, they allege, have defective starter motors.

The drivers sue General Motors, which owns Chevrolet. They claim that when GM supplied defective Camaros it breached express and implied warranties, violated countless consumer-protection laws, and was unjustly enriched. And they bring these claims in a class action on behalf of other Camaro owners.

GM contests almost everything the drivers say. It has moved to dismiss every claim and to strike the class allegations. Sometimes GM is right. The drivers sue under a federal law that requires 100 plaintiffs, but they muster only eight. And a few drivers took too long to sue. Still others failed to get repairs within the warranty period. Plus, GM is right that applying the unjust-enrichment laws of fifty states would be too unwieldy. So I will dismiss and strike some of the claims.

## I. BACKGROUND

### A. The starter defect

When turned, a car key triggers the starter motor, which engages the car's engine. Because the starter is so close to the engine, it can absorb a lot of heat. First Am. Compl., D.I. 22 ¶ 112. That can cause the starter to fail. *Id*. To prevent this, manufacturers install heat shields. *Id*. ¶¶ 113, 121.

The drivers say that every Camaro since model year 2010 has a defective heat shield. *Id*. ¶¶ 116, 121–25. As a result, they claim, their starters are exposed to excessive heat, damaging them and other important parts. *Id*. ¶¶ 114–16. The drivers call

2

this problem "the starter defect." So will I, sparing the reader words like "solenoid," "flywheel," and "pinion gear." *Id.* ¶¶ 109–10.

The drivers say that the starter defect makes their cars unsafe. *Id.* ¶ 118. They say it can cause their cars to start slowly, not start at all, or stall mid-drive. *Id.* Whatever the flaw, the drivers say the defect makes them "more likely to be involved in a collision because the vehicle cannot move on its own." *Id.*

The drivers say this problem is so common that GM drafted a document instructing dealerships on "the replacement of the starter … due to heat damage from the engine." *Id.* ¶ 131. Plus, some dealerships admitted that they were "aware" of the starter defect. *Id.* ¶ 143.

### B. The drivers and their claims

Distressed by their mounting repair bills, the drivers bring a class action against GM. Eight named plaintiffs sue under the laws of five states:

- Talley (Maryland);

- Previti and Franzen (California);

- the Loadholteses and Seale (Florida);

- Harris (Georgia); and

- Miller (Pennsylvania).

Because the drivers allege a violation of federal law, they also sue on behalf of *everyone* in the United States who bought or leased a post-2010 Camaro.

3

The drivers allege that GM violated a raft of federal and state consumer-protection laws, breached the warranties (express and implied) that came with their cars, and unjustly enriched itself by selling cars that it knew were defective.

GM moves to dismiss these claims and to strike the class allegations. To decide these motions, I take every factual assertion in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. MOST OF THE CONSUMER-PROTECTION CLAIMS SURVIVE

The drivers assert that GM violated a legion of state laws banning unfair or deceptive trade practices. *See, e.g.*, Fla. Stat. § 501.204(1). They say those laws required GM to tell consumers about the starter defect. GM parries with five arguments:

- It had no duty to disclose the starter defect, D.I. 24, at 6;

- the drivers never pleaded an affirmative act of concealment beyond "mere silence," *id.*;

- the drivers never pleaded that GM knew of the starter defect, *id.*;

- the drivers never pleaded that they relied on GM's alleged omission, *id.* at 9; and

- some of the drivers' claims are time-barred, *id.* at 10.

The first four fail; the last succeeds in part.

### A. The drivers plausibly pleaded that GM had a duty to disclose

GM says that it had no duty to disclose the starter defect. But each state's law says otherwise.

4

In Maryland, "vehicle manufacturers [must] report vehicle or equipment defects." *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 537 (D. Md. 2011); *see* Md. Code Ann., Com. Law §13-301(9).

GM fares no better under California law. In California, it had a duty to disclose if it had "exclusive knowledge of material facts not known or reasonably accessible to the plaintiff[s]." *Gutierrez v. Carmax Auto Superstores Cal.*, 248 Cal. Rptr. 3d 61, 84 (Ct. App. 2018). The drivers plead that GM knew about the starter defect. And the starter defect is material since it plausibly poses safety concerns. Plus, knowledge of the starter defect is not "reasonably accessible" to drivers. *Id.* How many could know about solenoids, pinion gears, electromagnets, and heat shields?

Georgia and Pennsylvania laws mirror California's, so the drivers' claims survive there too. *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013); *Zwiercan v. GMC*, 58 Pa. D. & C. 4th 251, 259 (Phila. Ct. Com. Pl. Sept. 11, 2002).

And Florida law reaches the same conclusion. In Florida, a manufacturer may not "knowingly fail[] to disclose a material defect that diminishes a product's value." *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012). As I rule below, the drivers plausibly pleaded that GM knew about the starter defect. That defect is material because it concerns the Camaro's safety. And a car that struggles (and sometimes fails) to start is worth less than one that does not. *Id.*

So this line of attack fails.

5

### B. The drivers need not plead acts beyond mere silence to state consumer protection claims

GM says a "deceptive omission" requires "a cover-up or affirmative act that is more than mere silence." D.I. 24, at 6 (internal quotation marks omitted). Yet many states require only omission. Where more is required, the drivers have pleaded enough.

Maryland law forbids mere "*omission* of any material fact." Md. Code Ann., Com. Law § 13-301(9) (emphasis added); *accord Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 326–27 (D. Md. 2021).

Likewise, in Georgia, Florida, and Pennsylvania mere nondisclosure is enough. *See, e.g.*, *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013); *Gavron v. Weather Shield Mfg.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011); *In re Passarelli Family Tr.*, 242 A.3d 1257, 1270 (Pa. 2020).

The California drivers also survive GM's challenge. In California, fraud by omission requires concealment. The drivers can show that by alleging that GM replaced one defective part with another. *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998–99 (N.D. Cal. 2013). They plead exactly that D.I. 22 ¶¶ 9, 11, 148–152. They need not plead more to proceed.

Again, GM fails to knock out any claim.

### C. The drivers plausibly allege that GM knew of the starter defect

GM argues that nothing in the complaint "establish[es] … knowledge of a defect." D.I. 24, at 7. But the drivers need not *establish* that GM knew about the starter defect. Instead, they need only *plausibly plead* that—and they do. The drivers allege that GM knew about the starter defect from:

- the results of GM's rigorous preproduction tests, *id.* ¶¶ 135–139;

- complaints on third-party websites, which GM says it monitors, *id.* ¶ 133 & n.7;

- consumer complaints to the National Highway Traffic Safety Administration, *id.* ¶¶ 126–28;

- dealership reports related to the starter defect, *id.* ¶¶ 140–42;

- and the demand for replacement parts related to the starter defect, *id.* ¶¶ 132, 143.

Plus, the drivers note that some dealers admitted awareness of the starter defect. *Id.* ¶ 143. Indeed, they say the problem is so prevalent that GM drafted a document teaching mechanics how to replace "faulty" starters. *Id.* ¶¶ 77, 131. Taken together, these factual assertions plausibly plead knowledge.

**D. The drivers plausibly plead that they relied on GM's omissions**

In some states, the drivers must allege that they relied on an omission to state a consumer-protection claim. *See, e.g.*, *Lloyd v. GMC*, 916 A.2d 257, 277 (Md. 2007). GM says that the drivers have failed to do that. I disagree. The drivers swear that they would have paid less for the Camaro (or not bought it) had they known of the starter defect. D.I. 22 ¶¶ 13, 18, 28, 39, 52, 64, 74, 85, 145, 230, 245, 440. That is reasonable: cars that start are worth more than cars that do not.

Plus, the drivers all claim to have studiously researched the Camaro before buying it. So if GM had disclosed the starter defect, they would have known about it. ¶¶ 13, 17, 27, 38, 51, 63, 73, 156, 180, 183, 230, 304, 312, 438, 440. Thus, where required, they have properly pleaded reliance.

### E. Some of the consumer-protection claims are time-barred

GM launches one last salvo against the drivers' consumer-protection claims. It argues that some drivers took too long to sue. This time, GM hits some of its targets.

In Florida, plaintiffs have four years to bring their claims. Fla. Stat. § 95.11(3)(f). The Loadholteses, two Florida residents, bought their Camaro in June 2016. D.I. 22 ¶ 61. But they joined this suit only in December 2020, six months past the deadline. And Florida law does not stop the filing clock simply because a consumer took a while to discover the violation. *Licul v. Volkswagen Grp. of Am.*, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013). True, the deadline is extended by fraudulent concealment. But the concealment must involve more than "mere non-disclosure." *Id*. Instead, such fraud must be active. *Id*. Here, the dealer made ineffective repairs. D.I. 22 ¶ 67–68. But that is not active fraud. So I will dismiss the Loadholteses' consumer-protection claims.

GM tries the same tactic to defeat California driver Previti's claim. But it fails. True, the filing clock starts ticking when the car is sold. *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, *3−4 (C.D. Cal. Oct. 3, 2014). But California recognizes an exception: the delayed discovery rule. Under this rule, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Stella v. Asset Mgmt. Consultants, Inc.*, 213 Cal. Rptr. 3d 850, 858 (Cal. Ct. App. 2017).

That rule applies to both California statutes here. *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 878 (Cal. 2013); *Asghari v. Volkswagen Grp. of Am.*, 42 F. Supp. 3d 1306, 1320 (C.D. Cal. 2013). To be sure, Previti says that he first learned about *an*

issue in 2016, six months after buying the car. But when he took the car to a local Chevrolet dealership, the "service advisor told him there was nothing wrong" with it. D.I. 22 ¶¶ 40–41. Only in March 2019, did the dealership diagnose the defect. *Id.* ¶¶ 42–44. So his earliest reasonable discovery date was a few months before he joined this lawsuit, well within the shorter of California's two statutory deadlines. *Compare* Cal. Civ. Code § 1783 *with* Cal. Bus. & Prof. Code § 17208.

Thus, Previti's claim survives, but I dismiss the Loadholteses' with prejudice.

### III. SOME EXPRESS-WARRANTY CLAIMS SURVIVE

The drivers say that their cars were covered by one of two warranties: GM's new-vehicle limited warranty or its certified preowned vehicle warranty. Both provide that GM will repair the Camaros if the cars break down during a certain time. The drivers say that GM breached those warranties because it never solved the starter defect; instead, it replaced faulty starters with equally faulty parts.

GM counters with several legal arguments. It notes that some warranties were expired. It argues that some of the drivers' claims fail because dealerships, not GM, sold the relevant Camaros. It also says that a few drivers voided their warranties by using non-GM parts to fix the starter defect. Last, GM argues it satisfied its warranty obligations by offering to repair the drivers' cars.

#### A. Some express warranties had expired by the time the starter defect appeared

GM says that many of the drivers' warranties had expired by the time they sought repairs. This argument knocks out four drivers.

9

The Loadholteses' starter broke nine months after their warranty expired. D.I. ¶¶ 61, 65. Harris's warranty coverage ended a month before he sought repairs. *Id.* ¶ 75. Both respond that the warranty is unconscionable. *Id.* ¶ 329. I disagree. If the drivers wanted more coverage, they could have bought extended warranties. But they did not. Extending their standard warranty would give them a retroactive rebate. So I dismiss their express-warranty claims with prejudice.

A fourth driver, Miller, also fails to show that her car was under warranty. Her starter began to fail two and a half years after she bought the car. But she never says how many miles her Camaro had at that point. She could have exceeded the 36,000-mile coverage limit. So I will also dismiss Miller's express-warranty claim. But I do so without prejudice. If Miller wants, she can amend the complaint and add details to show that her car was still under warranty.

Two other drivers, Franzen and Seale, survive GM's timing challenges. Franzen bought a certified preowned Camaro with 33,088 miles. *Id.* ¶ 25. The car came with a warranty that expired after one year or 12,000 miles. *Id.* Franzen experienced the starter defect eleven months, but 18,000 miles later. *Id.* ¶ 29. Normally, warranties say that coverage ends after one year or 12,000 miles, *whichever comes first*. If that is true, Franzen's claim crumbles. But for now, I must take Franzen at her word. And she says that the warranty was good for at least one year. *Id.* ¶ 25. So I will not dismiss her express-warranty claim yet.

Seale says his car was warrantied for two years and 19,000 miles. *Id.* ¶ 49. But six months after he bought it, he experienced the starter defect. *Id.* ¶ 53. GM notes that

Seale never pleaded the mileage at which his car began to exhibit the starter defect. But that omission is not fatal. Reading his claim in the light most favorable to Seale, he probably did not drive 19,000 miles in six months. So I will not dismiss Seale's claim either.

### B. GM's other express-warranty arguments fail

GM's next round of attacks fails. All the remaining express-warranty claims survive.

Start with Seale. GM says that his claim fails for lack of privity: Seale bought his Camaro from a dealership, not GM, so he cannot sue it. That is wrong.

Seale's warranty applies "to the original and any subsequent owners of the vehicle during the warranty period." D.I. 22 ¶ 108. Under Florida law, when (as here) a manufacturer voluntarily extends a warranty to remote purchasers, it cannot "resurrect [the] common law requirement of privity." *Fischetti v. Am. Isuzu Motors, Inc.*, 918 So. 2d 974, 976 (Fla. D. Ct. App. 2005). To be sure, some dicta cut the other way. *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. D. Ct. App. 2005). But later cases seem to require privity only in *implied*-warranty cases. *See Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. D. Ct. App. 2008) (citing *Weiss*).

And I predict that the Supreme Court of Florida would not require privity for express-warranty claims. Presumably, consumers pay more for products backed by manufacturer warranties. It would be unfair to let them pay a premium only to later find that the warranty is void because they, like everyone else, bought their car at a dealership. Seale paid more for the warranty. The law should honor his bargain, so I will not dismiss his claim for lack of privity.

11

GM has two more cards up its sleeve. First, it says some drivers voided their warranties by having third-party mechanics repair the starter defect with non-GM parts. True, GM's warranty does not cover "components that are damaged … by … non-GM part[s]." D.I. 15-2, at 24. But the drivers never say that non-GM parts harmed their GM ones. Rather, they say that because of the starter defect they had to buy expensive non-GM parts. Plus, some drivers got those non-GM parts only after GM refused to repair their cars under the warranty. D.I. 22 ¶ 29–32. So these drivers' claims can proceed.

Second, GM says that it complied with the warranty's terms by trying to repair some of the drivers' cars. But the drivers say those repairs failed to cure the defect. And since GM promised "to *correct* any vehicle defect," it breached the warranty by making "unsuccessful repair[s]." D.I. 22 ¶ 108 (emphasis added); *see Hines v. Mercedez-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1229 (N.D. Ga. 2005) (holding that unsuccessful repairs can breach a warranty). So GM's defense misses the mark.

### IV. I DISMISS THE MAGNUSON-MOSS WARRANTY ACT CLAIMS

The drivers also sue GM under the Magnuson-Moss Warranty Act, which sets rules for selling goods with written warranties. 15 U.S.C. §§ 2301–12. If the author of the warranty (the warrantor) breaks those rules, buyers can sue him. *Id.* § 2310(d)(1).

GM argues that I lack jurisdiction to hear these claims. It says that the drivers may bring Magnuson-Moss claims in a federal class action only if they name at least 100 plaintiffs. *Id.* § 2310(d)(3)(C). But, stresses GM, the drivers could muster only eight. So their claim is not "cognizable." *Id.* § 2310(d)(3).

The drivers counter that the 100-plaintiff requirement applies only to suits "brought under" Magnuson-Moss. *Id.* § 2310(d)(3). They say they are doing no such thing. Rather, insist the drivers, they rely on the Class Action Fairness Act (CAFA) for jurisdiction. 28 U.S.C. § 1332(d)(2). And CAFA lacks a 100-plaintiff requirement.

The parties present a tricky issue—one that has split two circuit courts and countless federal district courts. *Compare Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1033–35 (9th Cir. 2020), *with Kuns v. Ford Motor Co.*, 543 F. App'x 572, 573–74 (6th Cir. 2013). Be that as it may, I am confident that GM has the better argument.

Start with Magnuson-Moss's text. It says buyers can sue warrantors in federal district court "subject to" paragraph (3). 15 U.S.C. § 2310(d)(1), (d)(1)(B). "Subject to" means "only if." *See* Antonin Scalia & Bryan A. Gartner, *Reading Law* 126 (2012). Thus, the Act lets drivers sue in federal court, but only if they comply with paragraph (3).

So, what must one do to comply with paragraph (3)? The answer, alas, is not obvious. Again, we look to the text. Paragraph (3) says "no claim shall be cognizable" in federal court if:

- A class action is "brought under" paragraph (1)(B) of Magnuson-Moss, and

- "[T]he number of named plaintiffs is less than one hundred."

15 U.S.C. § 2310(d)(3), (d)(3)(C). A claim is not "cognizable" if courts lack jurisdiction to hear it. Cognizable (def. 3), *Black's Law Dictionary* (11th ed. 2019); *see also John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008) (noting that "cognizable by" means "about the same thing" as "has jurisdiction"). No one disputes that

this case has fewer than 100 named plaintiffs. So I may not take cognizance of this case—I lack jurisdiction to hear it—if it is "brought under" paragraph (1)(B) of Magnuson-Moss. *Id.* § 2310(d)(3).

What does it mean to bring a suit under a law? Again, the answer is not obvious. But first some critical distinctions. Not all laws are the same. Some, like a law prohibiting murder, impose substantive duties on people, so we call them "substantive" provisions. Others let people sue those who violate substantive provisions. In legalese, they provide "causes of action." Still others let courts hear certain cases. They grant "jurisdiction."

With those distinctions in mind, turn back to the question: what does it mean for someone to bring an action under a certain law? There are two possibilities. "Brought under law X" could mean "relying on X for a *cause of action*." This is GM's preferred reading. The drivers press a different meaning. "Brought under law X," they say, means "relying on law X for *jurisdiction*." Though the drivers' reading is plausible, GM's is better.

Litigants do the bringing of suits. So the "brought under" language in Magnuson-Moss is addressed to litigants, not courts. That suggests that it supplies a cause of action. Causes of action address themselves to litigants; jurisdictional provisions address themselves to courts. *Compare* 42 U.S.C. § 1983 (authorizing "the party injured" to bring "an action at law, suit in equity, or other proper proceeding for redress"), *with* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Supporting

14

this reading, paragraph (1) of Magnuson-Moss speaks of "consumers who … may bring suit," not courts that may hear cases. 15 U.S.C. § 2310(d)(1).

Plus, federal statutes routinely use "brought under" as shorthand for "relying on X for a cause of action." *See, e.g., Chris v. Tenet,* 221 F.3d 648, 651−53 (4th Cir. 2000). For instance, one provides that "United States district court[s] … shall have jurisdiction of actions brought under this title." 42 U.S.C. § 2000e-5(f)(3). If the drivers were right, the statute would read, "United States district court[s] … shall have jurisdictions of actions relying on this title for jurisdiction." That is a tautology. Congress may sometimes be less than crystal clear, but it is not in the business of enacting vacuous truisms. *See also* 15 U.S.C. § 2619(a) (similar); 26 U.S.C. § 6110(j)(1)(B), (2) (same); 30 U.S.C. § 1427(a) (same); 33 U.S.C. §§ 1515(a), 1910(c) (same); 42 U.S.C. § 9124(a) (same).

So "brought under" means "relying on X for a cause of action." On this reading, GM wins. The drivers rely on Magnuson-Moss for a cause of action. They cannot rely on CAFA for a cause of action because that law gives only jurisdiction. 28 U.S.C. § 1332(d). They bring their suits under paragraph (1)(B) of the Act. Yet they do not name 100 plaintiffs as required. So their claim is not cognizable. I dismiss it without prejudice. The drivers can add ninety-two other plaintiffs if they wish.

## V. MOST OF THE DRIVERS' IMPLIED-WARRANTY CLAIMS FAIL

Say a shop sells you a computer. You open it only to find that it will not start. You take it back to get a replacement. Without an express warranty, you can do that because the shop implicitly promised that the computer was fit for ordinary computing—browsing the internet, word processing, and so on. The implicit promise is an

"implied warranty of merchantability and fitness." So too here. GM impliedly promised that the Camaros would be fit for driving.

The drivers allege that GM breached that implied warranty by selling cars that struggle (and sometimes fail) to start. But many of these claims fail.

Start with Franzen and Previti, the California drivers. To recover, they first had to give GM several chances to fix their cars. Cal. Civ. Code § 1793.2(d)(1) (permitting recovery on warranty claims only after a "a reasonable number of [repair] attempts"); *Arakelian v. Mercedes-Benz USA, LLC*, 2018 WL 6422649, at *3 (C.D. Cal. June 4, 2018). And they had to do so within a year of buying their Camaros. Cal. Civ. Code § 1791.1(c).

Previti brought his Camaro to a GM dealership only once during the implied-warranty period. So I dismiss his claims with prejudice. Franzen says that her starter defect showed up a month before the implied warranty ran out. D.I. 22 ¶ 29. But she never says when she took it to GM's dealership for a repair. If she waited a month, her warranty would have expired. And even if she did not, GM might have had only one chance to fix her car. Her complaint rules out neither of these potentially fatal flaws. So I will dismiss her claims without prejudice.

Next, consider the Florida and Georgia drivers. Both Florida and Georgia recognize implied warranties only when the litigants were in privity with the manufacturer. *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. D. Ct. App. 2008); *Monticello v. Winnebago Indus.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005). But here, there was

no privity with GM: the Loadholteses, Seale, and Harris each bought their cars from dealerships, not GM. D.I. 22 ¶¶ 49, 61, 71. I dismiss their claims with prejudice.

Miller's claim also misses the mark. In Pennsylvania, a car is generally merchantable (and fit for its ordinary purpose) when it provides "safe" and "reliable" transportation and is "substantially free of defects." *Solarz v. Daimler Chrysler Corp.*, 2002 WL 452218, at *8 (Mar. 13, 2002) (quoting *Skelton v. General Motors Corp.*, 500 F. Supp. 1181, 1192 (N.D. Ill. 1980)). True, Miller's car was unreliable when it failed to start and stalled. D.I. 22 ¶¶ 86–92. But that happened after her express warranty had expired. *Id.* ¶¶ 82, 88, 108. And the express warranty provided that any implied warranty would expire at the same time. *Id.* ¶ 108; *see Nationwide Ins. Co. v. General Motors Corp.*, 625 A.2d 1172, 1178 (Pa. 1993) (upholding the validity of such a limitation). So Miller had no implied warranty when the car became unsafe and unreliable. Thus, I dismiss her claims with prejudice.

That leaves Talley. His car failed to start within the warranty period. D.I. 22 ¶¶ 15, 19. A car that cannot move is not fit for its ordinary purpose: transportation. GM counters that Talley did not plead that the defect existed at the time of sale, as required by Maryland law. D.I. 24, at 14; *see also Crickenberger v. Hyundai Motor Am.*, 944 A.2d 1136, 1143 (Md. Ct. App. 2008). Again, it ignores the complaint. Talley says that the previous generation of Camaros (2010–2015) exhibited the starter defect. D.I. 22 ¶ 116. Yet, argues Talley, GM never redesigned the heat shield. Instead, it installed the same defective shield in his car. *Id.* Plus, the drivers allege that GM's own testing showed that its starter would fail prematurely. *Id.* ¶¶ 134–39. Since

17

Talley plausibly pleads that the defect existed when he bought the Camaro, his claim may proceed.

### VI. MOST OF THE DRIVERS' UNJUST-ENRICHMENT CLAIMS FAIL

The drivers claim that GM unjustly enriched itself at their expense. Florida, Georgia, and Pennsylvania law preclude this claim. Maryland and California law do not. So some claims may proceed.

Start with Florida. There, unjust enrichment is available only when there is no "adequate remedy …at law." *Williams v. Bear Stearns Co.*, 725 So.2d 397, 400 (Ct. App. Fl. 1998). But the Florida drivers do have remedies at law: they allege an express contract (the warranty) and do not suggest that contract-based remedies are inadequate. *Cf. Teshakovec v. Ford Motor Co.*, 2018 U.S. Dist. LEXIS 116130, at *44 (S.D. Fla. July 12, 2018). Plus, they have a consumer protection claim for the same alleged facts. *See Lewis v. Mercedes-Benz United States*, 530 F. Supp. 3d 1183, 1233 (S.D. Fla. Mar. 30, 2021). So these claims are dismissed with prejudice.

Georgia and Pennsylvania also bar the unjust-enrichment claims here. Georgia does not let a plaintiff "plead an unjust enrichment claim in the alternative to a claim" for breach of an express warranty. *Callen v. Daimler Ag*, 2020 WL 10090879, at *13 (N.D. Ga. June 17, 2020). Pennsylvania has a similar rule. *Sabol v. Ford Motor Co.*, 2015 WL 4378504, at *5 (E.D. Pa. July 16, 2015). Yet the drivers from those states, Harris and Miller, plead both express warranty and unjust enrichment. So I dismiss their unjust-enrichment claims with prejudice.

But the Maryland and California drivers' claims survive. GM asserts that Maryland driver Talley cannot maintain his claim because (1) Talley and GM are not in

privity and (2) there is an express contract (the warranty) on point. D.I. 24, at 18. Both arguments fail. Maryland does not require privity or the absence of a contract when a plaintiff pleads fraud. *See, e.g.*, *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 328–29 (D. Md. 2021); *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 608–609 (Md. Ct. App. 2000). Because Talley pleads fraud here, his claims may proceed.

So may the claims of the California drivers. True, California does not allow standalone unjust-enrichment claims. *See Astiana v. Hain Celestial Grp., Inc.*,783 F.3d 753, 762 (9th Cir. 2015). But such claims may be "construe[d] … as a quasi-contract claim seeking restitution." *Id.* at 762. The drivers' claims could succeed in that form: several recent California courts have allowed such claims against car makers on similar facts. *See, e.g.*, *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 2021 WL 1338949, at *35 (N.D. Cal. Apr. 9, 2021). So Franzen and Previti's claims may continue.

## VII. GM's Motion to Strike

The drivers bring their claims on behalf of Camaro owners all across America. Alternatively, they bring their claims on behalf of Camaro owners from their states. GM seeks to strike all these class allegations. Fed. R. Civ. P. 12(f), 23(c)(1)(A), 23(d)(1)(D); D.I. 26, at 8. They say the drivers cannot show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b); D.I. 26, at 9.

Generally, motions to strike before discovery are disfavored. *See, e.g.*, *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 680–81 (E.D. Pa. 2011) (collecting cases). They

are appropriate only when "no amount of discovery will demonstrate that the class can be maintained." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 245 (E.D. Pa. 2012). That is true only for the nationwide class's claim of unjust enrichment. So I strike only that.

### A. I will strike the nationwide class's allegations of unjust enrichment

GM wants me to strike the nationwide class's claims for Magnuson-Moss violations and unjust enrichment. Because I am dismissing the Magnuson-Moss claims, that request is moot.

But I will strike the nationwide class's unjust-enrichment claim. The drivers never say which state's unjust-enrichment law applies. So I must look to Delaware law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (choice-of-law rules of the forum state apply.). And under Delaware law, I would have to apply the unjust-enrichment laws of fifty states because GM sold allegedly defective Camaros in every state. *Phoenix Canada Oil Co. v. Texaco Inc.*, 560 F. Supp. 1372, 1382–83 (D. Del. 1983). Those laws vary widely. *Compare Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012), *with Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 532 (N.D. Ill. 2008). Common issues of law could not possibly predominate. *See Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 325 (D. Del. 2012) (rejecting predominance when this Court had to apply the laws of sixteen states). So I will grant GM's motion to strike this claim. To be clear, the drivers who survived the motion to dismiss can still bring their unjust-enrichment claims, they just cannot do so on behalf of a nationwide class.

**B. I will not strike any other claim**

GM does not show that any other class's consumer-protection and warranty claims fail the predominance requirement. So I will deny those motions to strike.

First, GM argues that the drivers have not shown how prevalent the starter defect is among all Camaro owners. D.I. 26, at 11. True. But discovery might reveal that the starter defect is universal. So I will not strike any claim on this ground.

Second, GM contends that the drivers have not shown how the starter defect lowered their cars' value. *Id.* at 13. But again, discovery might help. Experts could, for instance, reveal a difference between the car's value with and without the defect. So I will not strike the claims on this ground either.

Third, GM says common issues of fact do not predominate because different class members will have treated their Camaros differently. *Id.* But it never explains how this affects any of the drivers' claims. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015). Again, I will not strike on this ground.

Finally, GM charges that the drivers lack standing to represent the owners of any model-year Camaro that they do not own. D.I. 26, at 9. But a named plaintiff may represent a class whose members bought different products. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012). And the drivers have plausibly pleaded that the starter defect afflicted all the putative class members' cars. So I deny the motion to strike these state law claims.

\* \* \* \* \*

Class actions can be complex. This case is no exception. So I list the claims I dismiss or strike for clarity.

I dismiss these with prejudice: the Loadholteses' consumer-protection, express-warranty, implied-warranty, and unjust-enrichment claims; Seale's implied-warranty and unjust-enrichment claims; Previti's implied-warranty claim; Harris' express-warranty, implied-warranty, and unjust-enrichment claims; and Miller's implied-warranty and unjust-enrichment claims.

I dismiss these without prejudice: Franzen's implied-warranty claims; Miller's express-warranty claims; and the Magnuson-Moss claims for every plaintiff.

Finally, I strike the nationwide class allegations for unjust enrichment. All others live to fight another day.